IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRELL J. DEBREW,
    Plaintiff,
    v.
DOUG AUMAN, UNIT MANAGER at
F.C.I. LORETTO, et al.,
    Defendant

Case No. 3:07-cv-179-KRG-KAP

## Report and Recommendation

### Recommendation

Plaintiff filed a complaint complaining about a disciplinary proceeding against him when he was an inmate at F.C.I. Loretto, which he claimed violated his First Amendment rights. The parties have filed cross motions for summary judgment. Defendants' motion, docket no. 27, should be granted, and plaintiff's motion, docket no. 30, should be denied.

### Report

Plaintiff has been an inmate in various Bureau of Prisons facilities since his August 1993 sentence by the United States District Court for the Eastern District of North Carolina to 324 months imprisonment for controlled substances offenses. By statute, inmates receive up to 47 days of good conduct time per year of their sentence, and when an inmate is charged with a disciplinary infraction that can result in the loss of good conduct time credits, due process requires that the prisoner receive: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate

is illiterate, 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 555-64 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Bureau of Prisons' process which implements Wolff is spelled out in 28 C.F.R.§§ 541.10-23. The disciplinary process begins with the preparation of an incident report, which is delivered to the inmate, and an investigation. 28 C.F.R.§ 541.14. Following investigation, the matter is referred to the Unit Disciplinary Committee for a hearing. 28 C.F.R.§ 541.15. There are four categories of offenses: greatest (100 series), high (200 series), moderate (300 series), and low moderate (400 series). 28 C.F.R.§ 541.13(a)(1)-(4). If the UDC finds that a prisoner has committed a minor offense, it may itself impose sanctions; for more serious offenses, the UDC would refer the matter to a Disciplinary Hearing Officer. 28 C.F.R.§ 541.15.

Plaintiff was at F.C.I. Loretto in May 2006 when defendant Lieutenant James Fedorka delivered Incident Report No. 1473262, charging plaintiff with violating institutional regulations by running a business (Code 408), unauthorized use of the telephone (Code 397), and refusing a program (Code 306). The Incident Report was issued by P. Glover, not named as a defendant. Fedorka delivered the report and conducted the investigation by asking plaintiff questions related to the charged offenses. He wrote "Based on statement of reporting staff that Debrew was conducting his business on the telephone while incarcerated along

2

with supporting d[o]cumentation, I feel the inmate is appropriately charged." That's it, as far as Fedorka is concerned.

The UDC which heard the disciplinary proceeding on June 5, 2006, was the two defendants Doug Auman, a unit manager and Douglas Custer, a counselor. After the hearing on the charges, the UDC found evidence to support the Code 397 (telephone) and Code 408 (running a business) and found insufficient evidence of a Code 306 (refusing program). The UDC imposed as a sanction 45 days loss of telephone and commissary privileges, and ordered plaintiff to "remove himself from the authority position of the selling of manuscripts through his website as well as the use of the telephone and letters to instruct people what to do." docket no. 28-1 at 19. The UDC referred in its written decision to the existence of CD recordings of telephone conversations in which plaintiff was allegedly running a business, but the UDC did not elaborate the content of the recordings. That's it, so far as Auman and Custer are concerned.

On administrative appeal, defendant John Yost, the warden, upheld the sanction on June 20, 2006. That's it, so far as Yost is concerned. At the next level of the Bureau of Prisons' three level appeal system, Scott Dodrill, the director of the Northeast Regional Office, vacated the sanction on July 25, 2006, and remanded it with instructions either to hold a new hearing and explain what evidence was in the telephone recordings, or to dismiss the charges. docket no. 28-2 at 2-3. Someone at the

prison made the decision to dismiss the charges[1]. In July 2007, plaintiff, by this time at F.C.I. Petersburg, filed a <u>Bivens</u>-type action against the defendants, seeking injunctive, compensatory, and punitive damages for what he asserted was the violation of his First Amendment rights "based on being ordered/forced to remove his web-page from the world-wide-web.".

I screened the complaint and found that plaintiff's transfer from F.C.I. Loretto mooted any claim for equitable relief, that Prison Litigation Reform Act, as codified at 18 U.S.C.§ 3626(a)(1)(A) and 18 U.S.C.§ 3626(g)(7), prohibited the award of punitive damages, and that based on the averments of the complaint defendants would be protected by the defense of qualified immunity because the conduct alleged did not violate clearly established rights which a reasonable person would have known. See <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987); <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999).

I recommended dismissal of the complaint but in accordance with circuit precedent advised plaintiff that he could correct the defects identified by filing an amended complaint. docket no. 2, Report and Recommendation October 5, 2007. Plaintiff filed objections and did not choose to amend his complaint, docket

---

1. It is not necessary to my decision, but after twenty years of reading habeas corpus petitions from F.C.I. Loretto in which petitioners assert that the video or audio evidence the BOP used in their disciplinary proceedings was overwritten and therefore the evidence of their guilt fails to meet the <u>Superintendent v. Hill</u> standard, I would bet that the CDs used to record plaintiff's conversations were reused and overwritten and the original content was long gone by the time Dodrill sent the matter back.

no. 4, and the court dismissed his complaint on October 23, 2007. docket no. 5. Plaintiff filed a motion for reconsideration, again declining to amend his complaint, docket no. 7. The motion was denied, docket no. 8.

Plaintiff took an appeal, and two years later a per curiam decision issued, affirming the dismissal of the complaint insofar as it requested injunctive relief, and vacating the dismissal of the complaint insofar as it sought damages, advising that I might order plaintiff to amend his complaint "to provide a more definite statement of his claims so that the qualified immunity issue may be resolved expeditiously." The matter remained at the circuit on plaintiff's motion for en banc hearing until the mandate issued in July 2010. Plaintiff meanwhile had complied with my order that he amend his complaint, docket no. 11, filing an amended complaint that differed from his original complaint in its addition of an assertion that the UDC had used a "confiscated letter" in reaching its decision, and its inclusion of a couple of citations to cases discussing either the First Amendment or the law of qualified immunity.

When served, defendants filed a motion to dismiss or for summary judgment, docket no. 27, which I ordered plaintiff to respond to as a motion for summary judgment, docket no. 29. Plaintiff filed a response, docket no. 30, which is in essence a legal brief devoid of citation to evidence. Defendants' Brief, docket no. 28, attaches the administrative record which obviously is the foundation for my narrative.

As can be seen from the foregoing, defendant Fedorka's role in this matter is legally insignificant. He investigated an incident report issued by someone else by asking plaintiff questions, and perhaps by "confiscating" a letter.

Defendants Auman and Custer sat as the UDC and issued a decision that was vacated because the Bureau of Prisons review process paid scrupulous attention to plaintiff's due process rights and Dodrill found defects in the UDC's adherence to procedures. Dodrill advised the UDC that absent "evidence indicating DeBrew was actively running the day-to-day operations of selling his book, offense Code 408 cannot be supported." docket no. 28-2 at 3. It does not appear that after this appellate interpretation of Program Statement 5350.27 (Inmate Manuscripts), docket no. docket no. 28-1 at 40, and Code 408 anyone ever made a determination that plaintiff's conduct was either running a business or legitimate First Amendment activity (or both) because the matter was dropped. It is not clear who made the decision to drop the matter or when. Plaintiff's argument, docket no. 30, that he is entitled to summary judgment on the assumption that the decision, whoever made it, is equivalent to a finding that Auman and Custer (and Yost) acted with knowledge that they were violating his clearly established First Amendment rights, is ridiculous. As I speculate in the footnote, the matter may have been dropped from an inability to rehear it. It could also have been because the sanctions at issue for Code 400 violations were so minor that it was not considered worth anyone's time. Or perhaps plaintiff was already scheduled for transfer to

F.C.I. Petersburg and the institutional value of any disciplinary proceeding was not considered worth anyone's time. We can never know in the metaphysical sense whether Custer and Auman should have found plaintiff violated Code 408, or whether his conduct is protected by the First Amendment, because the decision not to proceed with the matter on remand pretermits such a finding. Based on the record we do have, we know that the UDC saw that plaintiff had a website which directed readers how "to purchase or read a sample chapter" of plaintiff's written works. See e.g. docket no. 28-1 at 32, 36. Not having been advised that in light of the BOP Program Statement encouraging inmates to write, Code 408 required proof of day to day management of sales for a violation, the UDC found that directing potential customers where to go to purchase plaintiff's wares constituted running a business.

The UDC's finding was reasonable in light of the hitherto unsettled state of the law, even within the BOP[2]. That is all it takes to show that Auman and Custer (and Yost) are entitled to the defense of qualified immunity. Qualified immunity protects all government officials except those who are "plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986), and there is no evidence that Auman and Custer

---

2. It is ironic in the extreme, but no doubt of little comfort to plaintiff, that the BOP requires more proof of participation in running a business from prison to convict an inmate of a Code 400 level violation than federal law requires for proof of participation in a drug conspiracy that might have landed that inmate in prison in the first place.

(and Yost) were either incompetent or knowingly violated settled law.

Further, the UDC's instructions to plaintiff, which plaintiff mischaracterized as an order to take down his website, were merely that he "remove himself from the authority position of the selling of manuscripts through his website as well as the use of the telephone and letters to instruct people what to do." docket no. 28-1 at 19. In other words, to stop running a business. Even if their view of the law was later corrected (within the BOP) the UDC's remedy was limited to what they lawfully could have ordered if they had found a violation.

In short, there is not a shred of evidence that would overcome the defendants' defense of qualified immunity. Summary judgment should be entered for the defendants.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 7 January 2011

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Darrell J. DeBrew, Reg. No. 14102-056
F.P.C. Butner
P.O. Box 1000
Butner, N.C. 27509